**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 18 2006

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

**RUBE K. "KENNY" ANSCHULTZ
and SUSAN ANSCHULTZ**                              **PLAINTIFFS**

**V.**                  **CASE NO.  4-06  CV00001008JMM**

**ASBURY AUTOMOTIVE ARKANSAS DEALERSHIP HOLDINGS, LLC,
FORD MOTOR CREDIT COMPANY, TRANS UNION LLC,
EQUIFAX CREDIT INFORMATION SERVICES, INC., and
EXPERIAN INFORMATION SOLUTIONS, INC.**                  **DEFENDANTS**

## COMPLAINT

I.

This case assigned to District Judge _____
Jurisdiction and Venue Magistrate Judge _____

1.      This is an action brought under the provisions of the Consumer Credit Reporting

Reform Act of 1996 (Public Law 104-208, The Omnibus Consolidated Appropriations Act for Fiscal

Year 1997, Title II, Subtitle D, Chapter 1), Section 311 of The Intelligence Authorization for Fiscal

Year 1998 (Public Law 105-107), The Consumer Reporting Employment Clarification Act of 1998

(Public Law 105-347), Section 506 of The Gramm-Leach-Bliley Act (Public Law 106-102, and

Sections 358(g) and 505(c) of The Uniting and Strengthening America by Providing Appropriate

Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT Act) (Public Law

107-56) popularly known as The Fair Credit Reporting Act ( FCRA), 15 U.S.C. § 1681, et seq.,

together with pendent state claims. Jurisdiction is conferred upon this Court pursuant to 15 U.S. C.

§ 1681 (p).

2.      The acts complained of herein occurred in Pulaski County, Arkansas.

II.

Parties

3.     The Plaintiffs, Rube K. "Kenny" Anschultz (hereinafter referred to "Kenny" Anschultz") and Susan Anschultz (hereinafter referred to as "Susan Anschultz") are residents and domicillaries of Jackson County, Arkansas, and were at all times herein mentioned.

4.     The Defendant, Asbury Automotive Arkansas Dealership Holdings, L.L.C. (hereinafter referred to as "Asbury") is a foreign limited liability company authorized to do business in the State of Arkansas and may be served in this matter by serving its registered agent National Registered Agents Inc., 323 Center Street, Suite 1202, Little Rock, Arkansas 72201. Asbury does business under the trade style of "North Point Ford," which has offices and principal place of business in North Little Rock, Pulaski County, Arkansas.

5.     Ford Motor Credit Company (hereinafter referred to as "FMCC") is a foreign corporation authorized to do business in the State of Arkansas and may be served in this matter by serving its registered agent The Corporation Company, 425 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201.

6.     Trans Union LLC (hereinafter referred to as "Trans Union") is a foreign limited liability company authorized to do business in the State of Arkansas and may be served in this matter by serving its registered agent The Prentice-Hall Corporation System, 101 South Spring Street, Suite 220, Little Rock, Arkansas 72201.

7.     Equifax Credit Information Services, Inc. (hereinafter referred to as "Equifax") is a foreign corporation authorized to do business in the State of Arkansas and may be served in this

2

matter by serving its registered agent The Prentice-Hall Corporation System, 101 South Spring Street, Suite 220, Little Rock, Arkansas 72201.

8.     Experian Information Solutions, Inc. (hereinafter referred to as "Experian") is a foreign corporation authorized to do business in the State of Arkansas and may be served in this matter by serving its registered agent The Corporation Company, 425 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201.

9.     Trans Union, Equifax, and Experian are all consumer reporting agencies as defined by 15 U.S.C. Sec. 1681a.

III.

Facts Common to All Counts

10.     On September 30, 2004, Kenny Anschultz and Susan Anschultz purchased from North Point Ford a 2004 F250 SD 2WD Crew Cab Pick Up Truck (hereinafter referred to as "the Truck") which North Point Ford represented to Kenny Anschultz as being a new truck. The vehicle identification number for the truck was 1FTNW20P44EA35212.

11.     On September 30, 2004, at the point of sale, North Point Ford represented and warranted to Kenny Anschultz and Susan Anschultz that the actual mileage of the vehicle (as shown on the odometer) was 553 miles, when the repair records clearly reflect the odometer had been rolled back.

12.     In consideration for the purpose of purchase of the Truck, Kenny Anschultz and Susan Anschultz agreed to pay North Point Ford the total sales price of $41,968.08, with a cash down payment of $1,000.00, together with an additional charge of $200.00, for road hazard warranty on the vehicle tires and $1,995.00, for a service contract totaling $43,163.08.

3

13.     As of September 30, 2004, Kenny Anschultz and Susan Anschultz had an excellent reputation for credit worthiness (a high FICO score) and because of that excellent reputation for credit worthiness they applied for and received approval for financing from FMCC.

14.     Upon application to FMCC for financing for the purchase of the Truck, FMCC agreed to loan Kenny Anschultz and Susan Anschultz the sum of $43,163.08, payable in seventy-one (71) equal consecutive monthly installments of $599.48, with a final payment of $600.00. Because of their excellent reputation for credit worthiness (as reflected by their high FICO credit score) the Plaintiffs qualified for and received interest free financing for this transaction.

15.     On October 22, 2004, the Truck failed to operate properly.

16.     Upon its failure to operate properly, the Truck was towed to W & W Ford in Searcy, Arkansas. W & W Ford is an authorized Ford Motor Company franchised outlet.

17.     At W & W Ford, the mechanic assigned to repair the vehicle retrieved the repair history from the Ford Motor Company Oasis website. The mechanic reviewed the repair history of the Truck with Susan Anschultz and provided her a copy of the same.

18.     The repair report for the Truck indicated the Truck had been repaired on four (4) different occasions at two (2) different Ford dealerships (one (1) in Bosser City, Louisiana, and the other on Mt. Pleasant, Texas) before the Truck had sixty-three (63) miles on the odometer.

19.     The mechanic at W & W Ford indicated that while he could get the Truck running, the Truck was defective, it was going to suffer additional problems in the future, he could not fix the Truck, and the Truck would never be right, even if the entire motor were replaced.

4

20.     After the Truck has spent several days in the repair facility of W & W Ford in Searcy,

Arkansas, the Plaintiffs retrieved the Truck and drove the Truck for several days. During that period

of time the Truck failed to operate properly.

21.     On October 26, 2004, after the Plaintiffs had complained to North Point Ford, North

Point Ford requested the Truck be returned to their facility for mechanical review.

22.     On October 27, 2004, Kenny Anschultz delivered the Truck to North Point Ford.

23.     The Truck was admitted to the repair facility of North Point Ford on November 2,

2004.

24.     On November 11, 2004, representatives from Asbury assured Kenny Anschultz and

Susan Anschultz that Asbury would "take care of you."

25.     On December 7, 2004, Kenny Anschultz and Susan Anschultz, through their attorney,

notified North Point Ford that they had elected to revoke acceptance of the contract for purchase of

the Truck based upon material breach and material non-conformity to the purchase agreement.

26.     On December 7, 2004, Kenny Anschultz delivered the keys to the Truck to employees

of North Point Ford.

27.     On March 1, 2005, Kenny Anschultz and Susan Anschultz received from FMCC a

document entitled "Notice of Our Plan to Sell Property" notifying Kenny Anschultz and Susan

Anschultz that upon the expiration of ten (10) days from the date of the notice (March 1, 2005) they

would sell the Truck at a private sale. The notice did not indicate to whom the Truck would be sold

nor the price they were to receive for the Truck.

28.     On May 11, 2005, Kenny Anschultz and Susan Anschultz received from FMCC a

document entitled "Statement of Sale" indication the Truck had been sold for a purchase price of

5

$29,000.00, and after all credits due the Plaintiffs, there was still owing to FMCC the sum of $12,783.60.

29.     Such sale was not held in a commercially reasonable manner.

30.     On or about May 17, 2005, Kenny Anschultz and Susan Anschultz attempted to purchase a vehicle from Truman-Baker Chevrolet in Searcy, Arkansas, on credit terms.

31.     The finance company servicing Truman Baker Chevrolet would not finance the vehicle because the consumer report for the Plaintiffs herein reflected that FMCC had repossessed and sold a vehicle financed to the Plaintiffs herein because of delinquent payments. At that time the Plaintiff's FICO credit score was below credit worthiness standards.

32.     The Plaintiffs herein contacted each of the three Defendant consumer reporting agencies who independently in turn notified the Defendants that their records reflected a delinquency to FMCC and a subsequent repossession and sale. This was the only derogatory information in either Plaintiff's consumer report.

33.     The Plaintiffs herein then informed all three of the Defendant consumer reporting agencies that such a report was false, that they had never been delinquent in a payment to FMCC, that they had revoked acceptance of a vehicle and returned the vehicle to the dealer, however, none of the three consumer reporting agencies would further investigate nor remove the disputed report from their files resulting in a dissemination of false and derogatory information with respect to these Plaintiffs to any person, firm, or corporation having access to the reports by the three consumer reporting agencies containing the false and derogatory credit information.

34.     On or about August 10, 2005, the Plaintiffs made an application for a credit account with Sears Roebuck & Co. for the purchase of home appliances. Their application for

6

credit was denied. The only negative or derogatory information on the credit report was the report from FMCC of a repossession and sale.

COUNT I.

(§ 1681 i(a)(1)(A) Claim)

DUTY TO INVESTIGATE/FAILURE TO INVESTIGATE

35.     That pursuant to 15 U.S.C. § 1681 i(a)(1)(A) the Defendants, Trans Union LLC, Equifax, and Experian each owed these Plaintiffs the duty to reinvestigate the disputed information and to delete the information upon completion of the investigation, which the said Defendants failed, neglected, and refused to do, which refusal was the proximate cause of injury to these Plaintiffs.

36.     The injury suffered by these Plaintiffs as a direct and proximate result of the failure of Trans Union, Equifax, and experian includes extreme emotional dist, humiliation, embarrassment, and mental distress.

COUNT II.

§ 1681 E(b) Claim

37.     Pursuant to § 1681 e(b) of the Fair Credit Reporting Act, a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy" regarding the information contained in a consumer report.

38.     After of the initial inclusion of the disputed information, the plaintiffs notified the three credit reporting agencies of the dispute between the themselves and FMCC, the three consumer reporting agencies independently confirmed the credit information with FMCC, and thereafter continued to include the erroneous credit information in the credit report. The

7

Defendants Equifax , Trans Union, and Experian Information Solutions, Inc. failed, neglected, and refused to comply with § 1681 e(b) of the Fair Credit Reporting Act in as much as they included inaccurate information in Plaintiff's consumer report, the inaccuracy was due to their separate failure to follow reasonable procedures to assure maximum possible accuracy, which non-compliance was the direct and proximate cause of injury to these Plaintiffs.    Such inclusion constitutes a violation of their duty pursuant to § 1681 e(b).

39.     The injury suffered by these Plaintiffs as a direct and proximate result of the failure of Trans Union, Equifax, and experian includes extreme emotional dist, humiliation, embarrassment, and mental distress.

## COUNT III.

### § 1681 t(b)(1)(F) Claim

40.     The Defendant FMCC is a 'furnisher of information" as contemplated by the Fair Credit Reporting Act and, as such, after having received notice of a consumer dispute from a credit reporting agency, the furnisher must, pursuant to 15 U.S.C. § 1681 t(b)(1)(F), investigate the consumer dispute, report the results of the investigation to the consumer reporting agency, and modify or delete information that is inaccurate or incomplete, or cannot be verified. A furnisher of information who violates this provision of the Fair Credit Reporting Act (§ 1681 s-2(b)) is liable to the consumer for actual damages and attorney's fees and, upon proof of a willful violation, statutory and punitive damages as set forth in 15 U.S.C. § 1681n, and 1681o.

41.     These Plaintiffs, through their counsel, notified FMCC that the information

it had provided to the consumer reporting agencies was disputed and incorrect. Upon being notified by the Plaintiffs the information was disputed and incorrect, FMCC neglected, and refused to instruct the credit reporting agencies to delete or correct such information.

42.     At the time of the disposition of the truck by FMCC after its voluntary surrender to North Point Ford, the employees of FMCC, knowing the Plaintiffs herein had a good and sufficient defense to any claim for deficiency, in a willful and deliberate effort to damage the credit worthiness of the Plaintiffs herein, reported the transaction to the three credit reporting agencies as a voluntary repossession and sale with a deficiency. Such action was pursued by the agents, servants, or employees of FMCC with malice and with willful intent to injure the Plaintiffs herein and for no other purpose. Such deliberate acts on the part of the agents, servants, and employees of FMCC with malice and willful intent to injure the Plaintiffs herein entitle the Plaintiffs herein to recover actual damages for emotional stress, humiliation and embarrassment, and their inability to purchase goods and services on credit, attorney's fees and punitive damages.

## COUNT IV.

## FRAUD AND DECEIT CLAIM

43.     At the time agents, servants, and employees of Asbury represented to the Plaintiffs herein that (1) the actual mileage on the vehicle 553 miles, (2) the truck was new, and (3) Asbury would "take care of them" such agents, servants, and employees knew that said statements were false and misleading. Such agents, servants, and employees had actual knowledge (1) the truck had been the subject of extensive repair, (2) the milage as reflected on the odometer was erroneous (4) Asbury was the third dealership to which the truck had been transferred and the

9

assertion the truck was "new" was substantially false and misleading. Such representations were false representations of material facts. At the time of the making of said representations, the agents, servants, and employees of Asbury had the specific intent to cause these Plaintiffs to take action in reliance upon said representations, said action being to purchase the truck and, without knowledge of the previous repair record of the truck, these Plaintiffs justifiably relied upon the false representations of the agents, servants, and employees of Asbury. The reliance upon such statements by the agents, servants, or employees of Asbury is the direct and proximate cause of the damages suffered by these Plaintiffs.

44.     The damages suffered by these Plaintiffs as a direct and proximate result of the deceit practiced upon them by the agents, servants, and employees of Asbury consist of monetary damages, emotional pain and suffering, embarrassment and humiliation and extreme emotional distress. Additionally, because the acts of the agents, servants, and employees of Asbury were willful, deliberate, and practiced with malice, these Plaintiffs are entitled to recover not only actual damages but punitive damages as well.

WHEREFORE, these Plaintiffs, each of them separately, pray damages from Asbury, FMCC, Experian, Equifax, and Trans Union as aforesaid for pain and suffering, humiliation and embarrassment, extreme emotional distress, monetary damages, and punitive damages as aforesaid, together with attorney's fees costs and all other proper relief to which these Plaintiffs may be entitled.

RESPECTFULLY SUBMITTED,

RUBE K. "KENNY" ANSCHULTZ
and SUSAN ANSCHULTZ

10

By: _____

LARRY J. HARTSFIELD
HARTSFIELD, ALMAND & DENISON, PLLC
10016 West Markham
Little Rock, AR 72205
(501) 219-8500
Ark. Bar No. 69030

11